# EXHIBIT 2

FILED

2020 MAY 28  PM 2:45

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

|  |  |
|---|---|
| ADVENTIST    HEALTH    SYSTEM SUNBELT        HEALTHCARE CORPORATION, a Florida not for profit corporation, | |
| Plaintiff, | Case No.: _____ |
| v. | |
| MICHAEL H. WEISS, P.C., a California professional corporation; MICHAEL H. WEISS, a California resident; and TOMAX CAPITAL   MANAGEMENT,   INC.,   a California corporation,   and   YEHORAM TOM EFRATI, a California resident. | |
| Defendants. | |

## COMPLAINT

Plaintiff, Adventist Health System Sunbelt Healthcare Corporation ("AdventHealth"), a Florida not for profit corporation, hereby sues Defendants, Michael H. Weiss, P.C. (the "Law Firm"), a California professional corporation, and Michael H. Weiss ("Weiss"), a California resident, Tomax Capital Management, Inc. ("Tomax"), a California corporation, Yehoram Tom Efrati ("Mr. Efrati"), a California resident, and states:

## NATURE OF ACTION

1.     This is an action for damages that exceed $75,000 stemming from various contract claims, tort claims, and breach of fiduciary duty relating to the conduct of corporations and their agents.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. § 1332, for diversity jurisdiction.  AdventHealth is a Florida not for profit corporation, with its corporate headquarters in Altamonte Springs, Florida.  The Law Firm is a California professional corporation, with its principal place of business in Los Angeles, California. Weiss is a California resident, with a last known address in Los Angeles County, California. Tomax is a California corporation with its principal place of business in Los Angeles, California.

3.      This Court has personal jurisdiction over Defendants because there are sufficient minimum contacts between each Defendant and Florida. Defendants breached their respective duties that arise from their contractual and business relationship with AdventHealth, they are engaged in substantial and not isolated activity within Florida, the harm intended by the Defendants' actions is occurring in Florida, and pursuant to the parties' Paymaster Agreement.

4.      Venue is proper in the Middle District of Florida because the Defendants targeted their misconduct against AdventHealth in this District, and the harm more particularly described in this Complaint occurred in this jurisdiction.  Further, this District is the appropriate venue for this action pursuant to the forum-selection clause in the Paymaster Agreement between the parties.

## PARTIES

5.  AdventHealth is a Florida not for profit corporation, duly organized under the laws of Florida, with its corporate headquarters at 900 Hope Way, Altamonte Springs, Florida 32714.

6.  The Law Firm is a California corporation, duly organized under the laws of California, with its principal place of business at 6310 S. San Vicenta Boulevard, Suite 401, Los Angeles, CA 90048.

7.  Upon information and belief, Michael H. Weiss is a resident of California and a lawyer. He is and has been licensed in the State of California State Bar since December 9, 1982 (California Bar Number 107481). He resides in Los Angeles County, California. Mr. Weiss is a principal, partner and/or manager of the Law Firm.

8.  Tomax is a California corporation, duly organized under the laws of California, with its principal place of business at 3151 Cahuenga Blvd., Los Angeles, CA 90068.

9.  Upon information and belief, Mr. Efrati is a resident of California, whose address is 7241 Woodrow Wilson Drive, Los Angeles, CA 90068. Mr. Efrati serves as the CEO of Tomax.

## BACKGROUND

10.  This action arises out of the Defendants' wrongful release, receipt, and retention of $57,500,000 paid by AdventHealth to Mr. Weiss and his Law Firm to hold in escrow until Tomax performed its obligations under the parties' Paymaster Agreement.

31

Case 3:20-cv-06267-BRB-BJW   Document 1-2   Filed 07/14/20   Page 5 of 30   Page ID #:32

11.     Given the ongoing global pandemic and ensuing international health crisis caused by COVID-19, AdventHealth assessed its resources and determined it would be in need of personal protective equipment for medical workers.

12.     Tomax represented to AdventHealth that it could supply 10,000,000 3M N95 1860 ventilator masks, which Tomax could arrange for delivery from its California location to AdventHealth in Orlando, Florida.

## THE AGREEMENT

13.     On or about April 8, 2020, AdventHealth entered into a contract with Tomax, whereby AdventHealth agreed to purchase 10,000,000 3M N95 1860 ventilator masks (the "Masks") from Tomax at a unit cost of $5.75 for the total price of $57,500,000 (the "Purchase Order").

14.     The Purchase Order required Tomax to supply and deliver via common carrier the Masks to AdventHealth at 400 West Church Street, Orlando, Florida 32801. The Masks were due for delivery on or before April 18, 2020.

15.     The terms of the Purchase Order were incorporated into a Paymaster Agreement (dated April 9, 2020), which was executed by Tomax, AdventHealth, and the Law Firm.[1]

16.     Under the Paymaster Agreement, the Law Firm agreed to serve as the escrow agent and abide by the payment instructions.

---

[1] A true and correct copy of the Paymaster Agreement and Purchase Order are attached as Exhibit "A."

4

32

17.     The Paymaster Agreement required AdventHealth to wire the sum of $57,500,000 into the Law Firm's IOLTA account to be held in escrow by the Law Firm ("Escrow Funds").

18.     AdventHealth transferred the Escrow Funds, which the Law Firm accepted and deposited into its IOLTA account.

19.     After AdventHealth transferred the Escrow Funds, Tomax was required to provide AdventHealth with a redacted 3M distributor invoice with certificates via email.

20.     Upon AdventHealth's acceptance of the redacted invoice and certificates, the Law Firm was required to pay the Escrow Funds, less the escrow agent fee, to Tomax.

21.     If the foregoing conditions were not timely satisfied, the Law Firm was required to notify the parties and return the Escrow Funds to AdventHealth.

## DEFENDANTS' INITIAL MATERIAL BREACH

22.     On April 9, 2020, AdventHealth initiated the wire of the Escrow Funds, which were deposited into the Law Firm's IOLTA account on April 10, 2020.

23.     Tomax, however, failed to perform its obligations under the Paymaster Agreement.

24.     Tomax failed to provide AdventHealth with a redacted 3M distributor invoice, and otherwise failed to deliver the Masks to AdventHealth.

25.     Paragraph 8 of the Paymaster Agreement provides, "If the conditions herein are not completely fulfilled within ten (10) business days following the receipt of the funds in the Account, the Paymaster shall notify all Parties. Within five (5) business

5

days following the transmission of such notice, subject to a change authorized by the Parties, the Paymaster will return said funds by bank wire to the bank account from which the deposits were received, less its Paymaster Fees incurred up to that date and previously authorized disbursements."

26.     The condition precedent to the release of the Escrow Funds to Tomax was never satisfied. After Tomax defaulted, neither the Law Firm nor Mr. Weiss notified the parties within ten (10) business days. Instead of refunding the Escrow Funds to AdventHealth, the Law Firm transferred the Escrow Funds from its IOLTA account to either Tomax, Mr. Efrati, Mr. Weiss, or another account held by the Law Firm.

## DEFENDANTS ABSCOND WITH THE PAYMENT

27.     Once Tomax breached its contractual obligations, the Law Firm was required to return the Escrow Funds to AdventHealth in accordance with the Paymaster Agreement.

28.     AdventHealth notified the Law Firm, Mr. Weiss, and Mr. Efrati of Tomax's breaches, and directed a return of the Escrow Funds to AdventHealth.

29.     On May 6, 2020, at 9:56 a.m. EST, Desmond Jordan from AdventHealth sent an email to Mr. Weiss advising him that "Tomax Capital Management (TCM) has not supplied AdventHealth with any quantity of the Masks described in the Paymaster Agreement (the "Agreement"). Therefore, the conditions precedent for disbursement having not been met, this will serve as AdventHealth's notice of cancellation of the Agreement. Please return all AdventHealth funds forthwith as outlined in Section 8 of the Agreement."

6

34

30.     On May 13, 2020, at 12:59 p.m. EST, Mr. Weiss replied by email to AdventHealth, and said, "Noted and received, payment will be made in five business days as provided in paragraph 8 on May 13."

31.     On May 13, 2020, at 10:44 a.m. EST, Mr. Jordan sent an email to Mr. Weiss to find out when AdventHealth would receive the funds.

32.     On May 13, 2020, at 12:58 p.m. EST, Mr. Weiss replied by email, "I'm on a court call for a while, the wire will be ordered to today."

33.     AdventHealth did not receive any of the Escrow Funds on May 13, 2020 as contractually agreed and as reaffirmed by the Law Firm and Mr. Weiss.

34.     On May 13, 2020, AdventHealth discussed Tomax's breach of the purchase order and Paymaster Agreement with Efrati. AdventHealth did not extend the terms of the Paymaster Agreement, and AdventHealth and Tomax did not agree to new or modified terms for the payment and delivery of the Masks.

35.     The following day, on May 14, 2020, at 11:30 a.m. EST, Mr. Jordan emailed Mr. Weiss to determine the status of the Escrow Funds due to AdventHealth. Mr. Jordan advised Mr. Weiss that the Paymaster Agreement remained in full force and effect, and Tomax failed to meet its obligations under the Paymaster Agreement. Mr. Jordan further wrote, "I would like to remind you of your fiduciary duty as a holder of escrow, which includes your obligation to abide by the terms the agreement, including the return of our funds pursuant to our notice of cancellation . . . . If our money has already been wired, please provide details.  Otherwise, kindly advise what time today the funds will be sent."

36.     On May 14, 2020, at 5:51 p.m. EST, Mr. Weiss replied by email, "My bank just told me that the wire will be cleared for payment tomorrow."

37.     The Escrow Funds were not delivered to AdventHealth on May 15, 2020 as promised by Mr. Weiss and the Law Firm.

38.     Instead, on May 15, 2020, Mr. Weiss and the Law Firm transferred $55,500,000 of the Escrow Funds to AdventHealth.

39.     After the partial transfer was completed, AdventHealth was still missing $2,000,000 of the Escrow Funds, which were held by either the Law Firm, Mr. Weiss, or Tomax.

40.     The Law Firm and Mr. Weiss failed to perform as required and, thus, were not entitled to their $287,500 escrow fee.

41.     On May 15, 2020, at 7:21 p.m. EST, Marisa Farabaugh from AdventHealth sent an email to Efrati to advise that AdventHealth "received partial payment of the total escrow amount due to AdventHealth. As you are aware, this is seven business days after the contractually obligated five business days. When will the remaining funds be returned?"

42.     On May 15, 2020, at 7:27 p.m. EST, Mr. Efrati replied by email, "The full balance will be wire Monday [May 18, 2020] morning, it's about $2M."

43.     By the following Monday morning, May 18, 2020, Tomax failed to transfer the remaining balance of the Escrow Funds to AdventHealth as promised by Mr. Efrati.

8

44.     On Tuesday morning, May 19, 2020, Mr. Weiss informed Mr. Jordan and Jeff Bromme of AdventHealth that the remaining balance of the Escrow Funds were in Tomax's possession.

45.     AdventHealth sent demands to the Law Firm, Mr. Weiss, and Tomax to request the remaining balance of the Escrow Funds.

46.     On May 18, 2020, at 9:04 p.m. EST, Ms. Farabaugh sent an email to Mr. Efrati that demanded the full balance of the Escrow Funds by May 19, 2020, without any reduction for the escrow agent's fees.

47.     To date, AdventHealth has not received the remaining balance of the Escrow Funds, which totals approximately $2,000,000.

48.     AdventHealth demanded information from the Defendants regarding transactions involving the Escrow Funds, including account statements. However, none of the Defendants have provided this information.

### **DEFENDANTS' SCHEME TO DEPRIVE ADVENTHEALTH OF $2,000,000**

49.     At the time the Defendants entered into the Paymaster Agreement and made the foregoing representations after their respective breaches, the Defendants did not have any intention to perform their contractual obligations or, alternatively, Defendants intentionally refused to perform.

50.     The Law Firm and Mr. Weiss were aware the conditions precedent to transfer under the Paymaster Agreement had not yet been satisfied. Both of these Defendants knew and understood the express payment instructions as the Law Firm was a

9

37

party to the Paymaster Agreement, and Mr. Weiss signed the agreement in his capacity as President of the Law Firm.

51.     Despite this knowledge, the Law Firm transferred the Escrow Funds to Tomax, Mr. Efrati, or Mr. Weiss without regard to the terms of the Paymaster Agreement, and knowing Tomax had not satisfied the conditions precedent to transfer outlined in the Paymaster Agreement.

52.     The Law Firm, Mr. Weiss, Mr. Efrati, and Tomax handled the Escrow Funds in a manner contrary to the Paymaster Agreement.

53.     All conditions precedent to the maintenance of this action have been met, waived, or excused.

### COUNT I – BREACH OF CONTRACT AGAINST THE LAW FIRM

54.     AdventHealth re-alleges paragraphs 1–53.

55.     This is a claim for breach of the Paymaster Agreement against the Law Firm.

56.     The Law Firm entered into the Paymaster Agreement, and agreed to serve as escrow agent for the transaction.

57.     AdventHealth performed its duties under the Paymaster Agreement when it transferred the Escrow Funds to the Law Firm's IOLTA account.

58.     The Law Firm materially breached the Paymaster Agreement by failing to satisfy its contractual duties, including its duties to:

a. "afford the Parties with conscientious and diligent service to achieve solutions consistent with the spirit of this Agreement" (Paymaster Agreement ¶ 5);

b. "take reasonable steps to keep the Parties informed as to the status of all matters for which the Paymaster provides services" (Paymaster Agreement ¶ 5);

c. "ensure that any funds and instruments deposited into the Account are disbursed or delivered as instructed" (Paymaster Agreement ¶ 6);

d. notify the parties if the "conditions [of the Paymaster Agreement] are not completely fulfilled within ten (10) business days following the receipt of the funds in the [IOLTA] Account" (Paymaster Agreement ¶ 8);

e. "return said funds by bank wire to the bank account from which the deposits were received" no later than "five (5) business days following the transmission of such notice" (Paymaster Agreement ¶ 8); and

f. "faithfully [disburse the Escrow Funds] in accordance with the terms and conditions of this [Paymaster] Agreement" (Paymaster Agreement ¶ 10).

59.    The Law Firm transferred the Escrow Funds to Tomax and/or Mr. Weiss contrary to the terms of the Paymaster Agreement.

60.    The Law Firm failed to notify the parties of Tomax's breach of the Paymaster Agreement.

61.     After AdventHealth notified the Law Firm of Tomax's breach and demanded return of the Escrow Funds, the Law Firm failed to timely refund the Escrow Funds to AdventHealth, and unlawfully retained the Escrow Funds.

62.     The Law Firm eventually refunded $55,500,000 of the Escrow Funds to AdventHealth, but retained for itself or transferred to Mr. Weiss $2,000,000 in violation of the Paymaster Agreement.

63.     To date, the Law Firm has not returned the full amount due to AdventHealth.

64.     As a result of the Law Firm's material breaches, AdventHealth has suffered damages.

65.     AdventHealth is entitled to recover from the Law Firm its reasonable attorneys' fees and costs incurred in this action, pursuant to the Paymaster Agreement.

WHEREFORE, AdventHealth respectfully requests this Court enter judgment against the Law Firm for:

a.   damages in the amount to be determined at trial, but considerably more than $75,000, to compensate AdventHealth for the damages incurred;

b.   the reasonable attorney's fees and costs incurred by AdventHealth pursuant to paragraph 21 of the Paymaster Agreement; and

c.   prejudgment interest accruing from the date of the breach through entry of the final judgment.

12

40

## COUNT II – CONVERSION AGAINST THE LAW FIRM

66.    AdventHealth re-alleges paragraphs 1–53.

67.    This is a claim for conversion against the Law Firm.

68.    The Law Firm's improper exercise of dominion over AdventHealth's funds constitutes conversion.

69.    AdventHealth has immediate possessory and ownership rights to the Escrow Funds.

70.    The Law Firm wrongfully transferred or retained a portion of the Escrow Funds to Mr. Weiss or itself with the intent to exercise ownership inconsistent with AdventHealth's right of possession.

71.    AdventHealth has demanded the return of the Escrow Funds, but the Law Firm refused to return about $2,000,000 of the Escrow Funds.

72.    The Law Firm wrongfully asserted dominion over the Escrow Funds belonging to AdventHealth, and deprived AdventHealth of its ownership rights and dominion over the Escrow Funds.

73.    The funds retained are capable of identification.

74.    The Law Firm's unlawful transfer or possession of AdventHealth's funds has caused AdventHealth to suffer damages.

75.    The Law Firm acted with the specific intent to deprive AdventHealth of a portion of the Escrow Funds, or otherwise acted with reckless disregard of AdventHealth's rights in asserting dominion over the Escrow Funds. The Law Firm, which executed the Paymaster Agreement, had actual knowledge the Escrow Funds did

not and never could belong to the recipient. The Law Firm was aware the recipient had no legal basis for retaining any portion of the Escrow Funds as the conditions precedent to transfer under the Paymaster Agreement had not yet been satisfied.

WHEREFORE, AdventHealth respectfully requests this Court enter judgment against the Law Firm for:

    a.  actual damages in the amount to be determined at trial, but considerably more than $75,000, to compensate AdventHealth for the damages incurred;

    b.  punitive damages; and

    c.  prejudgment interest accruing from the date of the breach through entry of the final judgment.

## COUNT III – BREACH OF FIDUCIARY DUTY AGAINST THE LAW FIRM

76.    AdventHealth re-alleges paragraphs 1–53.

77.    This is a claim for breach of fiduciary duty against the Law Firm for disbursing the Escrow Funds in a manner contrary to the Paymaster Agreement.

78.    The Law Firm assumed the role of a fiduciary to AdventHealth under the express terms of the Paymaster Agreement and in performing its services. (Paymaster Agreement ¶ 6.)

79.    Thus, the Law Firm owed a fiduciary duty to AdventHealth to exercise reasonable skill and ordinary diligence in the performance of its services.

80.     The Law Firm breached its fiduciary duty by failing to protect AdventHealth's interest in the Escrow Funds and by disbursing funds in a manner contrary to the Paymaster Agreement.

81.     The Law Firm agreed to perform services as an escrow agent under the Paymaster Agreement and otherwise held itself out as an escrow agent for AdventHealth and Tomax.

82.     The Law Firm had an obligation to understand and comply with the provisions and conditions of the Paymaster Agreement.

83.     The Law Firm failed to exercise reasonable skill and ordinary diligence in holding and delivering possession of the Escrow Funds in strict accordance with the Paymaster Agreement.

84.     The Law Firm's conduct was willful and wanton or, at minimum, grossly negligent.

85.     The Law Firm failed to exercise even the slightest degree of care in the performance of its duty towards AdventHealth.

86.     As a result of these breaches, AdventHealth sustained damages.

87.     AdventHealth is entitled to recover from the Law Firm its reasonable attorneys' fees and costs incurred in this action, pursuant to the Paymaster Agreement.

WHEREFORE, AdventHealth respectfully requests this Court enter judgment against the Law Firm for:

a.   damages in the amount to be determined at trial, but considerably more than $75,000, to compensate AdventHealth for the damages incurred;

43

    b.  punitive damages;

    c.  the reasonable attorney's fees and costs incurred by AdventHealth pursuant to paragraph 21 of the Paymaster Agreement; and

    d.  prejudgment interest accruing from the date of the breach through entry of the final judgment.

## COUNT IV – CONVERSION AGAINST MR. WEISS

88.    AdventHealth re-alleges paragraphs 1–53.

89.    This is a claim for conversion against Mr. Weiss.

90.    Mr. Weiss's improper exercise of dominion over AdventHealth's funds constitutes conversion.

91.    AdventHealth has immediate possessory and ownership rights to the Escrow Funds.

92.    Mr. Weiss wrongfully transferred or received a portion of the Escrow Funds to himself with the intent to exercise ownership inconsistent with AdventHealth's right of possession.

93.    Mr. Weiss also caused the Law Firm to breach its fiduciary duties.

94.    AdventHealth demanded the return of the Escrow Funds, but Mr. Weiss refused to return $2,000,000 of the Escrow Funds.

95.    Mr. Weiss wrongfully asserted dominion over the Escrow Funds belonging to AdventHealth, and deprived AdventHealth of its ownership rights and dominion over the Escrow Funds.

16

44

96.    The funds retained are capable of identification.

97.    Mr. Weiss's unlawful taking of AdventHealth's funds has caused AdventHealth to suffer damages.

98.    Mr. Weiss acted with the specific intent to deprive AdventHealth of the Escrow Funds, or otherwise acted with reckless disregard of AdventHealth's rights in asserting dominion over the Escrow Funds. As the principal of the Law Firm, who executed the Paymaster Agreement, Mr. Weiss had actual knowledge the Escrow Funds did not and never could belong to him. Mr. Weiss was aware that he had no legal basis for his retention of the Escrow Funds as the conditions precedent to transfer under the Paymaster Agreement had not yet been satisfied.

WHEREFORE, AdventHealth respectfully requests this Court enter judgment against Mr. Weiss for:

a.  actual damages in the amount to be determined at trial, but considerably more than $75,000, to compensate AdventHealth for the damages incurred;

b.  punitive damages; and

c.  prejudgment interest accruing from the date of the breach through entry of the final judgment.

17

45

## COUNT V – BREACH OF FIDUCIARY DUTY AGAINST MR. WEISS

99.     AdventHealth re-alleges paragraphs 1–53.

100.     This is a claim for breach of fiduciary duty against Mr. Weiss for disbursing the Escrow Funds in a manner contrary to the Paymaster Agreement.

101.     Mr. Weiss agreed to perform services as an escrow agent under the Paymaster Agreement or otherwise held himself out as an escrow agent for AdventHealth and Tomax.

102.     Mr. Weiss had an obligation to understand and comply with the provisions and conditions of the Paymaster Agreement.

103.     Mr. Weiss assumed the role of a fiduciary to AdventHealth and Tomax, and further assumed the duties under the express terms of the Paymaster Agreement and in performing his services. (Paymaster Agreement ¶ 6.)

104.     Thus, Mr. Weiss owed a fiduciary duty to AdventHealth to exercise reasonable skill and ordinary diligence in the performance of his services.

105.     Mr. Weiss breached his fiduciary duty by failing to protect AdventHealth's interest in the Escrow Funds and by disbursing funds in a manner contrary to the Paymaster Agreement.

106.     Mr. Weiss failed to exercise reasonable skill and ordinary diligence in holding and delivering possession of the Escrow Funds in strict accordance with the Paymaster Agreement.

107.     Mr. Weiss's conduct was willful and wanton or, at minimum, grossly negligent.

108.    Mr. Weiss failed to exercise even the slightest degree of care in the performance of his duty towards AdventHealth.

109.    As a result of these breaches, AdventHealth sustained damages.

110.    AdventHealth is entitled to recover from Mr. Weiss its reasonable attorneys' fees and costs incurred in this action, pursuant to the Paymaster Agreement.

WHEREFORE, AdventHealth respectfully requests this Court enter judgment against Mr. Weiss for:

    a.  damages in the amount to be determined at trial, but considerably more than $75,000, to compensate AdventHealth for the damages incurred;

    b.  punitive damages;

    c.  the reasonable attorney's fees and costs incurred by AdventHealth pursuant to paragraph 21 of the Paymaster Agreement; and

    d.  prejudgment interest accruing from the date of the breach through entry of the final judgment.

## COUNT VI – BREACH OF CONTRACT AGAINST TOMAX

111.    AdventHealth re-alleges paragraphs 1–53.

112.    This is a claim for breach of the Paymaster Agreement against Tomax.

113.    Tomax entered into the Paymaster Agreement, and agreed to supply and deliver the Masks to AdventHealth upon payment.

114.    AdventHealth performed its duties under the Paymaster Agreement when it transferred the Escrow Funds to the Law Firm's IOLTA account.

19

115.     Tomax materially breached the Paymaster Agreement by failing to deliver the Masks pursuant to the terms of the Purchase Order.

116.     In addition to non-delivery, Tomax materially breached the Paymaster Agreement when it:

    a.     retained or received Escrow Funds from the Law Firm without satisfying conditions precedent in the Paymaster Agreement; and

    b.     failed "to provide timely, complete and accurate information and documentation to the Paymaster to enable the Paymaster to discharge its duties hereunder" (Paymaster Agreement ¶ 5).

117.     Following Tomax's material breaches, AdventHealth demanded return of the Escrow Funds.

118.     AdventHealth eventually received $55,500,000 of the Escrow Funds. However, Tomax failed to refund the full amount and retained for itself $2,000,000 in violation of the Paymaster Agreement.

119.     To date, Tomax has not returned the full amount due to AdventHealth.

120.     As a result of the Tomax's material breaches, AdventHealth has suffered damages.

121.     AdventHealth is entitled to recover from Tomax its reasonable attorneys' fees and costs incurred in this action, pursuant to the Paymaster Agreement.

48

WHEREFORE, AdventHealth respectfully requests this Court enter judgment against Tomax for:

  a. damages in the amount to be determined at trial, but considerably more than $75,000, to compensate AdventHealth for the damages incurred;

  b. the reasonable attorney's fees and costs incurred by AdventHealth pursuant to paragraph 21 of the Paymaster Agreement; and

  c. prejudgment interest accruing from the date of the breach through entry of the final judgment.


## COUNT VII – CONVERSION AGAINST TOMAX

122. AdventHealth re-alleges paragraphs 1–53.

123. This is a claim for conversion against Tomax.

124. Tomax's improper exercise of dominion over AdventHealth's funds constitutes conversion.

125. AdventHealth has immediate possessory and ownership rights to the Escrow Funds.

126. Tomax wrongfully received a portion of the Escrow Funds with the intent to exercise ownership inconsistent with AdventHealth's right of possession.

127. AdventHealth demanded the return of the Escrow Funds, but Tomax refused to return $2,000,000 of the Escrow Funds.

21

49

128.    Tomax wrongfully asserted dominion over the Escrow Funds belonging to AdventHealth, and deprived AdventHealth of its ownership rights and dominion over the Escrow Funds.

129.    The funds retained are capable of identification.

130.    Tomax's unlawful taking of AdventHealth's funds has caused AdventHealth to suffer damages.

131.    Tomax acted with the specific intent to deprive AdventHealth of the Escrow Funds, or otherwise acted with reckless disregard of AdventHealth's rights in asserting dominion over the Escrow Funds. Tomax had actual knowledge the Escrow Funds did not and never could belong to it as Tomax failed to fulfill its contractual obligations. Tomax was aware that it had no legal basis for retaining or receiving the Escrow Funds as the conditions precedent to transfer under the Paymaster Agreement had not yet been satisfied.

WHEREFORE, AdventHealth respectfully requests this Court enter judgment against Tomax for:

      a.  actual damages in the amount to be determined at trial, but considerably more than $75,000, to compensate AdventHealth for the damages incurred;

      b.  punitive damages; and

      c.  prejudgment interest accruing from the date of the breach through entry of the final judgment.

56

## COUNT VIII – CIVIL CONSPIRACY TO COMMIT CONVERSION AGAINST ALL DEFENDANTS

132.   AdventHealth re-alleges paragraphs 1–53.

133.   This is a claim for civil conspiracy against the Law Firm, Mr. Weiss, and Tomax.

134.   The Defendants conspired together to deprive AdventHealth of its immediate possessory and ownership interest in the Escrow Funds.

135.   The Defendants took steps in the furtherance of the conspiracy to convert the Escrow Funds.

136.   The Defendants wrongfully retained or transferred a portion of the Escrow Funds to Mr. Weiss, Tomax, or the Law Firm with the intent to exercise ownership inconsistent with AdventHealth's right of possession.

137.   Mr. Weiss took steps in furtherance of the conspiracy when he approved the transfer of the Escrow Funds despite knowing Tomax had yet to satisfy the Paymaster Agreement's conditions precedent.

138.   Mr. Weiss took these steps and furthered this conspiracy because he had an independent, personal stake in the outcome of this conspiracy. Upon information and belief, the Law Firm retained the escrow agent fee and Mr. Weiss retained the balance of the Escrow Funds.

139.   The Law Firm took steps in furtherance of the conspiracy when it transferred the Escrow Funds despite knowing Tomax had yet to satisfy its obligations under the Paymaster Agreement, refused to return the Escrow Funds despite multiple demands from AdventHealth, and retained the Escrow Funds.

23

140.    Tomax took steps in furtherance of the conspiracy when it accepted and retained the Escrow Funds even though it had not performed its obligations under the Paymaster Agreement.

141.    Mr. Efrati took steps in furtherance of the conspiracy when he assisted Tomax in concealing, receiving, and retaining the Escrow Funds, including making misrepresentations to AdventHealth regarding the refund of the balance of the Escrow Funds. Mr. Efrati's actions delayed the refund and prevented AdventHealth from recovering its Escrow Funds.

142.    Mr. Efrati took these steps and furthered this conspiracy because he had an independent, personal stake in the outcome of this conspiracy. Upon information and belief, Mr. Efrati was a recipient of a portion of the Escrow Funds.

143.    AdventHealth has demanded the return of the Escrow Funds, but the Defendants refused to return $2,000,000 of the Escrow Funds.

144.    The Defendants wrongfully asserted dominion over the Escrow Funds belonging to AdventHealth, and deprived AdventHealth of its ownership rights and dominion over the Escrow Funds.

145.    The Defendants' unlawful transfer or possession of AdventHealth's funds has caused AdventHealth to suffer damages.

146.    The Defendants acted in concert with the specific intent to deprive AdventHealth of the Escrow Funds, or otherwise acted with reckless disregard of AdventHealth's rights in asserting dominion over the Escrow Funds. Tomax, Mr. Efrati (as the CEO of Tomax and signatory to the Paymaster Agreement), the Law Firm, and

Mr. Weiss (as the principal of the Law Firm and signatory to the Paymaster Agreement) had actual knowledge the Escrow Funds did not and never could belong to anyone but AdventHealth. The Defendants were aware there was no legal basis for their transfer or retention of the Escrow Funds as the conditions precedent to transfer under the Paymaster Agreement had not yet been satisfied.

WHEREFORE, AdventHealth respectfully requests this Court enter judgment against the Defendants for:

    a.  actual damages in the amount to be determined at trial, but considerably more than $75,000, to compensate AdventHealth for the damages incurred;

    b.  punitive damages; and

    c.  prejudgment interest accruing from the date of the breach through entry of the final judgment.

### COUNT IX – CIVIL CONSPIRACY TO DEFRAUD ADVENTHEALTH AGAINST ALL DEFENDANTS

147.    AdventHealth re-alleges paragraphs 1-53.

148.    This is a claim for civil conspiracy against the Law Firm, Mr. Weiss, and Tomax, which conspired together to defraud AdventHealth of the Escrow Funds.

149.    The Defendants participated in a fraudulent scheme under which they induced AdventHealth to transfer the Escrow Funds to the Law Firm in connection with the sham Paymaster Agreement to allow the Defendants to misappropriate the funds for their own use and purposes.

53

150. Initially, Tomax represented that it would supply and deliver the Masks in exchange for $57,500,000, which AdventHealth agreed to deposit in escrow with the Law Firm. Tomax further represented that it would not receive or retain the Escrow Funds until the conditions of the Paymaster Agreement were satisfied.

151. The Law Firm then represented that it would safeguard the Escrow Funds and would not transfer these funds until the conditions of the Paymaster Agreement were satisfied.

152. Mr. Weiss (as principal for the Law Firm and signatory of the Paymaster Agreement) and Efrati (as CEO of Tomax and signatory of the Paymaster Agreement) knew and understood the terms of the Paymaster Agreement and the timing and method of payment of the Escrow Funds.

153. Once it became clear the Masks were not available, the Defendants refused to notify AdventHealth, and conspired together to retain the Escrow Funds.

154. After Tomax defaulted, the Defendants wrongfully retained, received, or transferred a portion of the Escrow Funds to Mr. Weiss, Tomax, or the Law Firm.

155. Mr. Weiss took steps in furtherance of the conspiracy when he approved the transfer of the Escrow Funds despite knowing Tomax had yet to satisfy the Paymaster Agreement's conditions precedent.

156. Mr. Weiss took these steps and furthered this conspiracy because he had an independent, personal stake in the outcome of this conspiracy. Upon information and belief, the Law Firm retained the escrow agent fee and Mr. Weiss retained the balance of the Escrow Funds.

54

157.    The Law Firm took steps in furtherance of the conspiracy when it transferred the Escrow Funds despite knowing Tomax had yet to satisfy its obligations under the Paymaster Agreement, refused to return the Escrow Funds despite multiple demands from AdventHealth, and retained the Escrow Funds.

158.    Tomax took steps in furtherance of the conspiracy when it accepted and retained the Escrow Funds even though it had not performed its obligations under the Paymaster Agreement.

159.    Mr. Efrati took steps in furtherance of the conspiracy when he assisted Tomax in concealing, receiving, and retaining the Escrow Funds, including making misrepresentations to AdventHealth regarding the refund of the balance of the Escrow Funds. Mr. Efrati's actions delayed the refund and prevented AdventHealth from recovering its Escrow Funds.

160.    Mr. Efrati took these steps and furthered this conspiracy because he had an independent, personal stake in the outcome of this conspiracy. Upon information and belief, Mr. Efrati was a recipient of a portion of the Escrow Funds.

161.    All of the Defendants took steps in furtherance of the conspiracy by misrepresenting they would transfer the Escrow Funds to AdventHealth after Tomax defaulted on the Paymaster Agreement. Each Defendant made separate representations on the timing of the refund, and none of them fulfilled their promises.

162.    The Defendants engaged in this misconduct with the intent to induce AdventHealth to rely upon the representations and make the transfer.

163.    AdventHealth justifiably relied on these Defendants' misrepresentations when it transferred the Escrow Funds to its detriment.

164.    AdventHealth has demanded the return of the Escrow Funds, but the Defendants refused to return $2,000,000 of the Escrow Funds.

165.    The Defendants' conspiracy to defraud AdventHealth caused AdventHealth to suffer damages.

166.    The Defendants acted in concert with the specific intent to deprive AdventHealth of the Escrow Funds, or otherwise acted with reckless disregard of AdventHealth's rights in asserting dominion over the Escrow Funds. Tomax, Efrati (as the CEO of Tomax and signatory to the Paymaster Agreement), the Law Firm, and Mr. Weiss (as the principal of the Law Firm and signatory to the Paymaster Agreement) had actual knowledge the Escrow Funds did not and never could belong to anyone but AdventHealth. The Defendants were aware there was no legal basis for their transfer or retention of the Escrow Funds as the conditions precedent to transfer under the Paymaster Agreement had not yet been satisfied.

WHEREFORE, AdventHealth respectfully requests this Court enter judgment against the Defendants for:

    a.  actual damages in the amount to be determined at trial, but considerably more than $75,000, to compensate AdventHealth for the damages incurred;

    b.  punitive damages; and

56

c.  prejudgment interest accruing from the date of the breach through entry of the final judgment.

Respectfully submitted this 28th day of May, 2020.

/s/ Mayanne Downs
**Mayanne Downs as Trial Counsel**
Florida Bar No. 754900
**Jason Zimmerman**
Florida Bar No. 104392
**Joshua Bachman**
Florida Bar No. 98238
GrayRobinson, P.A.
301 East Pine Street, Suite 1400 (32801)
P.O. Box 3068
Orlando, Florida 32802
Telephone:  (407) 843-8880
Facsimile:  (407) 244-5690
mayanne.downs@gray-robinson.com
jason.zimmerman@gray-robinson.com
joshua.bachman@gray-robinson.com
cindi.garner@gray-robinson.com
kathy.savage@gray-robinson.com